**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 23, 2016**

# In the Court of Appeals of Georgia

A15A1733. JORDAN et al. v. STATE OF GEORGIA.

BARNES, Presiding Judge.

Eight individuals brought suit on behalf of the State of Georgia against three related pharmaceutical companies under the Georgia False Medicaid Claims Act (GFMCA), OCGA § 49-4-168 et seq.[1] The plaintiffs alleged that the companies fraudulently obtained millions of dollars in Medicaid payments for an anti-psychotic medication that the companies improperly marketed to healthcare providers for "off-label" uses, such as to calm elderly patients with dementia and help them sleep.

The State moved to dismiss the complaint based on an earlier-filed federal False Claims Act, 31 USC § 3729 et seq., suit against the same pharmaceutical companies for similar claims. The State became a plaintiff in the federal suit before

---

[1]The individual plaintiffs are Steven Jordan, J. Dorsey Smith, M. J. Collins, Melvin Boykin, Barbara Dekle, Sheryl Thompson, Millie Reddish, and Mary Morton. The defendant pharmaceutical companies are Janssen Pharmaceuticals, Inc., Janssen Products, L.P., and Johnson and Johnson.

this case was filed, and entered into a settlement agreement with the pharmaceutical companies after this case was filed. The trial court granted the State's motion to dismiss, and the plaintiffs have appealed.[2] For the reasons that follow, we affirm.

In 2007, the legislature enacted the GFMCA and created a procedure by which Georgia's Attorney General or its private citizens could sue people and entities for making false or fraudulent Medicaid claims that depleted the state treasury. OCGA § 49-4-168.2 (a), (b). The Act provides for penalties and damages to be assessed against the defendants, and was designed to reward individuals "when their initiative results in civil recoveries for this state." Ga. L. 2007, p. 355, § 1/HB 551. See Michael A. Sullivan, *A "False Claims Act" Is Finally Enacted in Georgia*, Ga, Bar J., October 2007 at 12. Private citizens must file the action under seal in the name of the State, and must first serve a copy of the complaint and any material supporting evidence on the Attorney General. OCGA § 49-4-168.2 (c) (1), (2). The case remains under seal for at least 60 days "to allow the Attorney General to investigate the

_____

[2]The appellate record in this case was originally transmitted under seal, and after briefing the plaintiffs moved this court to unseal it. The State objected, and we remanded the case for the trial court to determine whether to unseal all or part of the record. *Jordan v. State of Georgia*, Case Number A15A0137. Upon remand, the trial court entered an order unsealing the record, and the case was returned to this court for resolution on the merits.

allegations of the complaint" and either elect to intervene or move the court to extend the time under which the complaint remains sealed. OCGA § 49-4-168.2 (c) (2), (3). Before the expiration of the time during which the case is sealed, the statute directs that the Attorney General shall either proceed with the action and prosecute the case or decline to take over the action; if the latter, the private citizens have the right to proceed with the action on their own. OCGA § 49-4-168.2 (c) (4). The trial court may then unseal the complaint and the defendant may be served. OCGA § 49-4-168.2 (c) (2), (5).

If the Attorney General elects to intervene, he may seek to limit the participation of the individuals who initiated the action, may move to dismiss the complaint, or may settle the complaint over the individual objections if the court determines the settlement would be fair, adequate, and reasonable under all the circumstances. OCGA § 49-4-168.2 (d) (1)-(3). Even if the Attorney General initially elects not to intervene, he retains the right to intervene "at a later date for any purpose, including, but not limited to, dismissal of the civil action notwithstanding the objections of the person initiating the civil action," as long as the person has been notified by the Attorney General that a motion to dismiss has been filed and is given an opportunity for a hearing on the motion. OCGA § 49-4-168.2 (f).

3

Additionally, the GFMCA has a "first to file" provision, specifying that "[w]hen a person brings a civil action under this subsection, no person other than the Attorney General may intervene or bring a related civil action based on the facts underlying the pending civil action." OCGA § 49-4-168.2 (c) (6). The Act also provides that "[i]n no event may a person bring a civil action under this article which is based upon allegations or transactions which are the subject of a civil or administrative proceeding to which the State of Georgia is already party." OCGA § 49-4-168.2 (j).

The complaint and exhibits in this case were filed on March 20, 2013. The exhibits included affidavits from the individual plaintiffs, six of whom are healthcare workers who were or had been employed at Pleasant View Nursing Home and two of whom were sales representatives for the defendants. On March 26, 2013, the plaintiffs filed with the trial court a copy of the disclosure statement given to the Attorney General, which included the complaint, exhibits, and a detailed summary of the evidence supporting their claim. The plaintiffs contended that the defendant pharmaceutical companies had caused false claims to be submitted to the State Medicaid program "as a direct result of their false and misleading marketing of the prescription drug Risperdal regarding its efficacy and safety profile, as well as their

4

promotion of Risperdal for 'off-label' uses not approved by the U.S. Food and Drug Administration."

On May 21, 2013, the State requested a four-month extension of the time during which it could elect to intervene, and asked the trial court to partially lift the seal to disclose the complaint to other state attorneys general who were members of the National Medicaid Fraud Control Units and to the U. S. Department of Justice (DOJ). The plaintiffs consented to the extension and partial lifting of the seal.

The State submitted an in camera memo supporting its request for an extension and to partially lift the seal, explaining that both the Fraud Control Units and the DOJ had teams assigned to multiple federal cases involving the same allegations of fraud against the same defendants, and that the State of Georgia was a named plaintiff in those federal cases. The State sought to share the complaint so it would be able to "evaluate the allegations with the government entities that have already invested substantial resources into investigation of the same claims," and thus make an informed decision about whether to intervene in this action. The trial court granted the extension and partially lifted the stay as requested.

The next pleading in the record is the State's motion to dismiss the complaint with prejudice, filed on March 19, 2014. The State argued that this action is

5

jurisdictionally barred by the GFMCA because a federal lawsuit with identical claims was filed almost ten years earlier, and because the State had already settled those claims, precluding the trial court from obtaining jurisdiction to consider these claims. Included with the motion was a copy of the fourth amended federal complaint filed by Victoria Starr against these defendants on March 3, 2010, alleging complaints that mirror those alleged in the case at bar.[3] The State of Georgia was a named plaintiff in the amended federal complaint, which contained detailed factual allegations about the defendants' illegal kickbacks and fraudulent promotion of Risperdal for use in "elderly patients, children and prisoners . . . [who] suffer from a wide spectrum of psychiatric mood disorders not normally considered by the FDA to be appropriate for treatment with the highly sedating drug Risperdal." Count 5 of the federal complaint alleged that the defendants violated the GFMCA. The federal complaint was dismissed on December 31, 2013, with an order that also unsealed itself, the amended complaint, and the parties' joint stipulation of dismissal.

The State also submitted as an exhibit to its motion to dismiss this case a copy of the settlement agreement between the State and the pharmaceutical companies, which acknowledged the States' claims against the companies for their conduct in

---

[3]Starr's initial complaint was filed in April 2004.

6

marketing Risperdal for off-label use and paying illegal remuneration to healthcare and pharmacy providers to induce them to promote and prescribe the drug. The agreement provided that Janssen Pharmaceuticals, Inc., would plead guilty to a federal criminal charge of introducing misbranded drugs into interstate commerce and that the defendants, while admitting no further wrongdoing, would pay to the United States and participating States a total of $1,273,024,000 plus interest accrued until the money was disbursed. Participating States, that is, those that signed the agreement and agreed to dismiss with prejudice any similar pending state law claims they had the authority to dismiss, were each allocated $33,435,877 plus interest, with $13,285,638 payable directly to the States and the difference payable to the federal government. The settlement agreement was signed by a representative of Georgia's Attorney General on September 3, 2013.

The plaintiffs objected to the State's motion to dismiss, arguing that the State failed to file notice of its intention to intervene or not in this case before the expiration of the extension of time granted by the trial court. They also argued that their case was the first filed because the unsealed federal documents do not show that the federal plaintiffs had served the State with a copy of the complaint and all material supporting information as required by OCGA § 49-4-168.2 (c) (1), or that

7

the State investigated the *Starr* complaint and elected to intervene within the time frame set out in the Act at OCGA § 49-4-168.2 (c) (2)-(4). Finally, they argued that the *Starr* complaint failed to state the Georgia claim with the specificity required by the Act.

Following a hearing in May 2014, the trial court granted the State's motion to dismiss in July 2014, finding that the State had settled the *Starr* case in November 2013. As a condition for recovery, the State agreed to release with prejudice claims that the defendants

> knowingly ... (a) promoted the sale and use of Risperdal for conditions and patients which [were] not approved as safe and effective by the Food and Drug Administration ... (b) made false and misleading statements about the safety and efficacy of Risperdal; and (c) offered and paid illegal remuneration to healthcare professionals and long term care pharmacy providers to induce them to promote and/or prescribe Risperdal in violation of [federal] and state anti-kickback statutes.

The trial court further found that the federal court had granted the State of Georgia's request for a dismissal with prejudice of the claims identified in the settlement agreement, and that the federal dismissal order was a final judgment on the merits for res judicata purposes. Finally, the court found that the claims in this case were based on the same cause of action as the *Starr* case.

8

On an appeal of a trial court's order that dismisses a cause of action for failure to state a claim upon which relief can be granted, the reviewing court must determine whether either party has presented matters outside the pleading to the trial court, and if so whether the trial court excluded or considered such matters. Therefore, if matters outside the pleadings were presented to the trial court, which then considered these matters as it resolved the case, then a reviewing court is required to treat the resulting trial court's order as a ruling on a motion for summary judgment.

(Citations and punctuation omitted.) *Johnson v. RLI Ins. Co.*, 288 Ga. 309, 310 (704 SE2d 173) (2010). The trial court in this case clearly considered matters outside the pleadings, including the federal *Starr* complaint and settlement, and thus we must treat the resulting order as a ruling on a motion for summary judgment. Id. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, and we review a summary judgment grant de novo, construing the facts in favor of the respondent. *Muhammad v. Allstate Ins. Co.*, 313 Ga. App. 531, 533 (2) (722 SE2d 136) (2012).

The plaintiffs assert that the federal complaint was procedurally and substantively defective and therefore did not bar their claims under the GFMCA. They also argue that the issue is not res judicata because defects in the federal

complaint prevented the State from settling the claims. We need not determine whether the federal *Starr* complaint complied with what the plaintiffs describe as the "mandatory procedures" of the GFMCA or whether the *Starr* complaint lacked the specificity required by the GFMCA, because the record shows that the plaintiffs' claims are barred by the doctrine of res judicata.

We have found no Georgia appellate cases addressing claims made under the GFMCA, although the body of federal law interpreting the almost-identical federal False Claims Act is extensive. We need not dive very deeply into the pool of federal False Claims Act case law to resolve the case before us, however, because the familiar doctrine of res judicata applies to bar this complaint.

> The doctrine of claim preclusion (or res judicata) bars the parties to an action from relitigating matters that were or could have been litigated in an earlier suit. The doctrine facilitates the conclusive resolution of disputes by reducing the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions.

(Citation and punctuation omitted.) *Shurick v. The Boeing Co.*, 623 F.3d 1114, 1116 (II) (11th Cir. 2010) (final judgment in federal False Claims Act case precludes further litigation in state whistleblower case involving, among other things, "the same

common nucleus of operative fact"). The common-law doctrine of res judicata is codified in this state at OCGA § 9-12-40, and for the bar to apply, "three prerequisites must be satisfied: (1) identity of the parties or their privies; (2) identity of the cause of action; and (3) previous adjudication on the merits by a court of competent jurisdiction." (Citations omitted.) *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 421 (627 SE2d 549) (2006).

The three prerequisites necessary to bar further litigation in this case are met. First, the parties are in privity. The State of Georgia became a plaintiff in the *Starr* suit, this suit was brought by the plaintiffs on behalf of the State, and both cases were filed against the same pharmaceutical companies. "A privy is generally defined as one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." (Citation and punctuation omitted.) *Brown & Williamson Tobacco Corp.*, 280 Ga. at 421 (1). In *Brown*, the executor and widower of a woman who died of lung cancer brought a product liability suit against Brown and Williamson, seeking compensatory and punitive damages. Our Supreme Court determined that the punitive damages claim was barred by the doctrine of res judicata, because the State had previously brought and settled a similar suit against the

11

company. Id. at 421-423 (1). The court reasoned that, while the compensatory damages claim was personal, the State had brought its punitive damages claim on behalf of all of its citizens and therefore was in privity with the individual plaintiffs with regard to that claim. Id. Similarly, in this case, the State and the plaintiffs acting on behalf of the State were in privity.

Second, the cause of action in the prior suit is the same as the cause of action in the present case. While the plaintiffs correctly assert that the information in their complaint and exhibits is more specific to Georgia than the information contained in the *Starr* complaint, the actions alleged in the federal suit clearly encompass those alleged in the state suit. In the federal action, the State sought compensatory damages to reimburse the treasury for funds spent by the State for health care costs attributable to the pharmaceutical companies' improper promotion and marketing of Risperdal. In the current proceeding, plaintiffs also seek compensatory damages on behalf of the State to reimburse the treasury for funds spent by the State for health care costs attributable to the pharmaceutical companies' improper promotion and marketing of Risperdal. Thus, we "find identity of the causes of action." *Brown & Williamson Tobacco Corp.*, 280 Ga. at 423 (2).

12

The third prerequisite for the application of the doctrine of res judicata requires that the prior claim be adjudicated on the merits by a court of competent jurisdiction. OCGA § 9-12-40. The plaintiffs argue that this prerequisite is not met because the *Starr* settlement was conditioned on the termination of this case, and this case has not terminated. The State points out that the settlement was not conditioned on the actual termination of this case, but rather on the State's agreement "to dismiss with prejudice any state law claims which the State has authority to dismiss" and not to "engage[] in litigation" with the defendants regarding the covered conduct. The federal court granted the State's request to dismiss with prejudice the claims against these defendants as described in the settlement agreement. "A voluntary dismissal with prejudice constitutes a judgment on the merits for purposes of res judicata with regard to the same parties and the same cause of action." (Citation and punctuation omitted.) *Dept. of Transp. v. Revco Discount Drug Centers*, 322 Ga. App. 873, 875 (1) (746 SE2d 631) (2013).

As all three prerequisites to finding this action barred by res judicata have been met, the trial court did not err in granting the State's motion to dismiss.

13

2. The plaintiffs' remaining enumerations of error questioning the procedural and substantive validity of the *Starr* complaint under the GFMCA are rendered moot by our holding in Division 1.

*Judgment affirmed. McMillian, J., concurs. Ray, J., concurs in judgment only.*